UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN L. TOUNKARA, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-09-cv-2216 |
| | § | |
| KBR INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Pending before the Court is the defendant's, K.B.R., Inc. ("KBR"), motion for summary judgment (Docket Entry No. 12). The plaintiff, Karen L. Tounkara (the "plaintiff"), has filed no response in opposition to KBR's motion for summary judgment and her time to do so has expired. After having carefully evaluated the motion, the record, the undisputed facts and the applicable law, the Court determines that KBR's motion for summary judgment should be GRANTED.

## II. FACTUAL BACKGROUND

On or about January 1, 2009, Kellogg Brown & Root Services, Inc., ("KBR Services"), a wholly-owned subsidiary of KBR, entered into Master Agreement No. MAH0044 with UltraStaff, a medical staffing company, pursuant to which UltraStaff agreed to furnish licensed vocational nurses and medical assistants to KBR Services and any of its affiliates, including KBR, for the period from January 1, 2009 to December 31, 2009 ("Master Agreement").[1] (*See* Docket Entry No. 12, Declaration of Jolyn West Scheirman ("Scheirman Decl.") at ¶¶ 10 and

[1] UltraStaff supplies registered nurses, licensed vocational nurses, medical assistants and other medical staff to various institutional and private clients, such as clinics, hospitals, schools, jails and individuals. (*Id.*, Scheirman Decl. at ¶ 4.)

12). The Master Agreement incorporated certain general conditions with respect to subcontractors, such as UltraStaff, including the following:

> 3.2. PERFORMANCE
>
> 3.2.1.1. [UltraStaff] shall perform and provide all labor, [Ultrastaff] Material, [UltraStaff] Equipment, and other items and requirements necessary to execute and complete the Services under the Agreement. . . .
>
> 3.2.1.2. [UltraStaff] agrees to furnish all supervision, know-how, labor, supplies, tools, [UltraStaff] Equipment, [UltraStaff] Materials, facilities, storage and all other things, tangible and intangible, necessary or desirable to execute, perform and complete the Services.
>
> . . .
>
> 26. CONTRACTUAL RELATIONSHIP
>
> 26.1 INDEPENDENT SUBCONTRACTOR – [UltraStaff] shall perform the Services as an independent Subcontractor with exclusive control of the manner and means of performing the Services in accordance with the requirements of the Agreement. . . . No Employee or agent engaged by [UltraStaff] shall be, or shall be deemed to be an employee or agent of any member of Contractor Group[2]. . . .

(*Id.* at ¶ 13; *see also* Declaration of David Homsi ("Homsi Decl.") at ¶ 5; Ex. 1.)

The plaintiff submitted an application for employment with UltraStaff and attended KBR Services' Orientation at UltraStaff's office on December 30, 2008. (*See* Docket Entry No. 12, Scheirman Decl. at ¶¶ 16 and 17.). On January 2, 2009, UltraStaff hired her as a Licensed Vocational Nurse. (*Id.*) In connection with her employment, the plaintiff signed various documents, including a "Notice of Criminal Record Check," an "UltraStaff RN/LVN Clinical Skills Competency Evaluation," an "IRS Form W-4 Employee's Withholding Allowance

[2] The term "Contractor Group" is defined to include KBR Services, its Client, its and their Affiliates, and each of their respective directors, officers, etc. (*See* Docket Entry No. 12, Homsi Decl. Ex. 1.)

Certificate," "UltraStaff's Licensed Vocational Nurse Job Description" and "UltraStaff's Orientation Policies and Procedures for Field Staff." (*Id.* ¶ 17.). On January 6, 2009, in accordance with its Master Agreement with KBR Services, UltraStaff sent the plaintiff to perform medical staffing services at KBR Services.[3] The plaintiff completed her work assignment at KBR Services on January 6, 2009, and did not perform any further work for it or KBR thereafter. (*Id.* ¶ 20.). UltraStaff contends that it paid the plaintiff wages for such services in January of 2009. (*Id.* ¶ 19.).

Subsequently, on January 13, 2009, the plaintiff filed a charge of discrimination against KBR with the Texas Workforce Commission, Civil Rights Division, alleging that she had been subjected to discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), on the basis on her religion due to KBR's failure to permit her to wear her headscarf for religious purposes during working hours. (*See* Docket Entry No. 12, Ex. 4.) On January 14, 2009, she filed a similar charge of discrimination against UltraStaff arising out of the same occurrence.[4] (*Id.*, Ex. 2.) On April 8, 2009, the EEOC forwarded a Dismissal and Notice of Rights letter to the plaintiff notifying her of its no-finding dismissal of her charge of discrimination and further advising her of her right to sue under federal law within ninety (90) days. (*See* Docket Entry No. 1, Ex. A.).

On July 13, 2009, the plaintiff commenced the pending action against KBR alleging that it "intentionally discriminated against [her] because of her religion in violation of Title VII by failing to make a reasonable, religious accommodation to allow [her] to wear her hijab (headscarf) in observance of her Muslim faith during her hours of employment." (Docket Entry

[3] UltraStaff began performing services pursuant to the Master Agreement on January 6, 2009.

[4] On April 6, 2009, the plaintiff and UltraStaff mediated their dispute before a U.S. Equal Employment Opportunity Commission ("EEOC") mediator and reached a settlement agreement whereby the plaintiff agreed to release UltraStaff from liability associated with her Title VII claim in exchange for a payment in the amount of $6,000. (*See* Docket Entry No. 12, Scheirman Decl. at ¶ 22; *see also* Ex. 3.).

No. 1, ¶ 8.). On February 19, 2010, KBR filed a motion for summary judgment seeking judgment as a matter of law on the plaintiff's Title VII claim. On March 12, 2010, the plaintiff filed a motion for continuance seeking to extend the deadline within which she is required to respond to KBR's motion for summary judgment in order to conduct discovery on the issue of whether KBR could be considered her employer. On March 16, 2010, this Court entered an Order granting the plaintiff ninety (90) days within which to respond to KBR's motion for summary judgment. To date, the plaintiff has yet to file a response.

**III. STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must

'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Rather, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nevertheless, the reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The plaintiff in this case has not filed a response to KBR's motion for summary judgment. In accordance with this Court's local rules, oppositions to motions are due within twenty-one days, unless such time is extended. S.D. TEX. L.R. 7.3. Any failure to respond is "taken as a representation of no opposition." S.D. TEX. L.R. 7.4. Notwithstanding the plaintiff's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if [the] failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end, the plaintiff, as "[t]he movant[,] has the burden of establishing the absence of a genuine issue of material fact and, unless [it] has done so, the [C]ourt may not grant the motion, regardless of whether any response was filed." *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is appropriate, the Court may accept as undisputed the facts set forth in the movant's motion. *See Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## IV. ANALYSIS & DISCUSSION

KBR argues that it is entitled to judgment as a matter of law on the plaintiff's Title VII claim because the plaintiff was not its employee or that of any of its affiliates or subsidiaries. More specifically, it contends that it did not have an employment relationship with the plaintiff because she was an employee of UltraStaff, an independent contractor. Title VII provides, in

relevant part, that "[i]t shall be an unlawful employment practice for an *employer* . . . to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Thus, in order to state a Title VII claim, a plaintiff has the burden of proving that the defendant was her employer. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003) ("[R]elief under Title VII is available only against an employer."). The Fifth Circuit has reasoned that "[d]etermining whether a defendant is an 'employer' under Title VII . . . involves a two-step process." *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 (5th Cir. 1993). "First, the defendant must fall within the statutory definition. Second, there must be an employment relationship between the plaintiff and the defendant." *Id.* (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990), *cert. denied*, 498 U.S. 1026, 111 S. Ct. 676, 112 L. Ed.2d 668 (1991)).

An "employer" is defined under Title VII as "a person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b). In order to ascertain whether an employment relationship exists between a plaintiff and a defendant within the meaning of Title VII, the Fifth Circuit utilizes the "hybrid economic realities/common law control test." *Deal*, 5 F.3d at 118 – 19. In *Deal*, the Fifth Circuit explained the test as follows:

> In determining whether an employment relationship exists within the meaning of Title VII . . . we apply a 'hybrid economic realities/common law control test.' *Fields*, 906 F.2d at 1019 (citing *Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985)). The right to control an employee's conduct is the most important component of this test. *Fields*, 906 F.2d at 1019. When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's

> work schedule. *See id.* at 1020; *Mares*, 777 F.2d at 1068. The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *See Mares*, 777 F.2d at 1068;

*Id.*; *see also Muhammad v. Dall. Cnty. Supervision and Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007).

Here, when examining the control component of the hybrid test, the Court determines that while the plaintiff reported to work on KBR's premises, UltraStaff retained the right to hire, fire and supervise her as well as set her work schedule. (*See* Docket Entry No. 12, Scheirman Decl. at ¶¶ 7, 8, 13, 18, 19 and 20; *see also* Homsi Decl. at ¶¶ 5 – 8; Ex. 1.). Indeed, by her own admission, particularly in her charge of discrimination filed with the Texas Workforce Commission, the plaintiff expressly stated that she was hired by UltraStaff. (*See* Docket Entry No. 12, Ex. 4.) This fact is also substantiated by the Declaration of Jolyn West Scheirman, UltraStaff's President, as well as the Master Agreement entered into by and between KBR and UltraStaff and filed in support of KBR's motion for summary judgment. In her sworn declaration, Scheirman confirms that the plaintiff applied for work directly with UltraStaff and that, on January 2, 2009, UltraStaff made the decision to hire her as a Licensed Vocational Nurse. To this end, Scheirman asserts that "[n]either KBR nor KBR Services [was] involved in UltraStaff's decision to hire the plaintiff. (*Id.*, Scheirman Decl. at ¶ 17.) She also states that in connection with her employment with UltraStaff, the plaintiff attended orientation at UltraStaff's office on December 30, 2008 and signed "UltraStaff's Licensed Vocational Nurse Job Description" and "UltraStaff's Orientation Policies and Procedures for Field Staff" at the time. (*Id.*) Scheirman further avers that UltraStaff set the terms and conditions of the plaintiff's employment, retained the right to terminate her and determined her work schedule, including whether she could work overtime in any given workweek. (*Id.* at ¶ 18.).

In addition, in her declaration, Scheirman maintains that UltraStaff had two medical personnel on-site at KBR, namely Rebecca Orzabal and Eloisa Lagunas Rodriguez, to supervise the plaintiff and others who were working pursuant to the Master Agreement. (*Id.* at ¶ 20; *see also* Homsi Decl. at ¶¶ 5 and 7.). According to Scheirman, Orzabal and Rodriguez assigned the plaintiff, along with the other UltraStaff employees, to their workstations and explained to them the method by which their work assignments were to be completed. (*Id.*) They, thereafter, migrated to each workstation in an effort to monitor each employees work activities so as to ensure accuracy. (*Id.*) Though KBR maintained guidelines by which these employees were to operate when performing services under the Master Agreement, the summary judgment evidence overwhelmingly demonstrates that UltraStaff was responsible for conveying these guidelines to the employees who were working pursuant to the Master Agreement. (*Id*.). The plaintiff has proffered no evidence to establish the converse. Thus, the control component of the hybrid test favors a finding that UltraStaff, not KBR, exercised the right to control the plaintiff's work.

An evaluation of the economic realities component of the hybrid test also supports a finding that UltraStaff paid the plaintiff's wages, withheld taxes from her wages, provided her benefits, and set the terms and conditions of her employment. Specifically, Scheirman declares that UltraStaff: (1) set the plaintiff's compensation; (2) determined the benefits that it would provide to her, including malpractice and workers' compensation insurance; (3) paid her wages; (4) withheld FICA and federal payroll taxes on the wages it paid to her; (5) paid the employer portion of FICA and unemployment taxes on her wages; (6) identified her as its employee on its Texas Workforce Commission's Employer's Quarterly Report Form for the first quarter in 2009; and (7) paid unemployment taxes on her. (*Id.* at ¶¶ 18 and 19.). Moreover, KBR's Senior Subcontract Administrator, David Homsi, asserts, in a sworn declaration filed in support of

KBR's motion, that he is familiar with UltraStaff's Master Agreement with KBR and, in accordance with its terms, KBR Services paid UltraStaff for its services and not the individual UltraStaff employees who worked pursuant to the Master Agreement. He further asserts that based on the records reviewed relative to the Master Agreement neither KBR nor KBR Services: (1) made any payment of any kind to the plaintiff; (2) paid employer's social security taxes on UltraStaff's employees, including the plaintiff; (3) provided any benefits to the plaintiff or any other UltraStaff employee; (4) paid the employer's portion of FICA or unemployment taxes on the plaintiff; (5) were involved in determining the plaintiff's wages; or (6) set any of the terms or conditions of the plaintiff's employment. (*See* Docket Entry No. 12, Homsi Decl. at ¶ 8.) The plaintiff, in contrast, has failed to tender any evidence to establish otherwise or to raise a genuine issue of material fact that she was dependent on KBR as a matter of economic reality. Therefore, this Court determines that the economic realities component of the test favors a finding that UltraStaff, not KBR, served as the plaintiff's direct employer.

## V. CONCLUSION

Based on the foregoing discussion, the Court finds that there is no genuine issue of material fact as to the plaintiff's employment status. After evaluating the relevant factors set forth above, the Court determines that KBR was not the plaintiff's employer within the meaning of Title VII and that the plaintiff cannot maintain a cause of action against it under Title VII. Accordingly, KBR's motion for summary judgment is GRANTED.

It is so **ORDERED**.

SIGNED at Houston, Texas this 14th day of September, 2010.

Kenneth M. Hoyt
United States District Judge